Jason T. Brown (NY Bar # 4389854)
**JTB LAW GROUP, LLC**
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (201) 630-0000
Fax: (855) 582-5297
Email: jtb@jtblawgroup.com

**Attorneys for Plaintiff and the Class**
**[Additional counsel on signature page]**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORMAN LEIBOWITZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>COSTCO WHOLESALE CORPORATION, and TRIDENT SEAFOODS CORPORATION,<br><br>        Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Norman Leibowitz ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Costco Wholesale Corporation ("Costco") and Trident Seafoods Corporation ("Trident") (collectively, "Defendants"), and alleges as follows, upon personal knowledge and based upon the investigation conducted by his attorneys:

## NATURE OF THE ACTION

1.     Defendant Costco advertises and sells its own line of "fish oil" products, including Wild Alaskan Fish Oil, under its Kirkland Signature brand name.  Defendant Trident manufactures the Kirkland Wild Alaskan Fish Oil (the "Product").

2.     Costco promises consumers on its website that Kirkland products "mean quality" and that the Kirkland signature brand "allows the company to control the quality of the Kirkland Signature product[s]" which are "equal to or better than the national brands."

3.     Defendants however, have broken that promise and violated federal and state law by misrepresenting the nature and quality of the Product.

4.     Specifically, Defendants market and sell the Product as a "whole-food alternative to highly processed fish oils," which contain 1,050 mg Omega unsaturated fatty acids.

5.     In reality, testing done by Consumer Labs, as well as testing commissioned by Plaintiff through his counsel, has revealed, among other misrepresentations and omissions, that the Product contains a substantially lower amount of Omega fatty acids than advertised. Defendants therefore have made false and misleading claims on the labels of the Product, including, without limitation, statements relating to the omega content contained in the Product.

6.     Plaintiff, like all reasonable consumers of the Product, would not have purchased the Product had Defendants disclosed that it contained mislabeled quantities of ingredients.

7.     Plaintiff thus brings this suit on behalf of herself and similarly situated consumers who resided in New York and purchased Kirkland Wild Alaskan Fish Oil.  Defendants engaged in unfair and/or deceptive business practices by misrepresenting the nature and quality of the Product on the Product's labels, and therefore violated state consumer protection law, committed common law fraud, breached express and implied product warranties, violated New York

2

General Business Law § 349 and violate the New York False Advertising Act, New York General Business Law § 350 (collectively, "New York Consumer Protection Laws" or "NYCPL"), and unjustly enriched themselves to the detriment of consumers. For the reasons set forth herein, Plaintiff and the Class seek compensatory damages, treble damages, injunctive relief, fees, costs, and all other appropriate relief.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed Class members exceed $5,000,000 and because Defendants are citizens of a different state than Plaintiff and most Class Members.

9.     This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do business in New York, including this District. Defendants marketed, promoted, distributed, and sold the Product in New York, and Defendants have sufficient minimum contacts with this State and/or sufficiently availed themselves of the markets in this State through their promotion, sales, distribution, and marketing of the Product within this State, including this District, to render the exercise of jurisdiction by this Court permissible.

10.     Venue is proper in this District pursuant to: (a) 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District while Plaintiff resided in this District; and (b) 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this District.

## PARTIES

11.     Plaintiff Norman Leibowitz is a resident of Glendale, New York and purchased Kirkland Wild Alaskan Fish Oil on several occasions over the last year from a Costco store

3

located in Westbury, New York.  Prior to purchase, Plaintiff read and relied on the false claims made by Defendants set forth in this Complaint regarding the Product.

12.     Defendant Costco is a Washington corporation with a principal place of business located at 999 Lake Drive, Issaquah, WA 98027.  Costco, a publicly traded corporation, owns and operates over 400 warehouses throughout the United States and Puerto Rico.

13.     Defendant Trident is a Washington corporation with a principal place of business located at 5303 Shilshole Avenue NW, Seattle, WA 98107.

14.     Plaintiff reasonably relied on Defendants' labeling, marketing and advertising in purchasing the Product.  Plaintiff and all reasonable consumers of the Product purchased and used the Product in reliance on Defendants' representations.  If Plaintiff and reasonable consumers had known that the Product did not contain the promised ingredients as advertised and/or was not potent, they would not have purchased the Product.

15.     As a result of Defendants' actions, Plaintiff did not receive the benefit of the bargain, suffered out-of-pocket losses, and is entitled to restitution.  Plaintiff has suffered injury-in-fact, damages and ascertainable losses of money by paying the purchase price for Defendants' Product, for which he is entitled to monetary damages.

## FACTUAL ALLEGATIONS

16.     The sale of fish oil is over a billion-dollar industry.  A piece of this industry is the sale and use of fish oil as a dietary supplement through fish oil pills.

17.     Fish oil is FDA approved to lower triglyceride levels and is typically used for conditions related to the heart and blood system, such as to lower blood pressure, triglycerides, and cholesterol levels; to prevent heart disease and stroke; and for clogged arteries, chest pain, irregular heartbeat, heart failure, rapid heartbeat, and blood clots.

4

*Defendants' False and Misleading Claims*

18.     Defendants make numerous representations on the labels of Kirkland Wild Alaskan Fish Oil, including the claim that the Product contains 1050 mg of Unsaturated Fatty Acids, consisting of 330 mg of Total Omega-3 Fatty acids and 720 milligrams of Omega Fatty Acids 5,6,7,9, & 11 per serving:





19.     A reasonable consumer such as Plaintiff would expect that the label statements regarding the quantity of ingredients in and purity of the Product would be truthful and not deceptive or misleading.

20.     Testing of Kirkland Wild Alaskan Fish Oil performed by Consumer Lab, LLC, a provider of independent testing of products, including herbal products, supplements, vitamins, and minerals, revealed that the Product contained substantially less than the promised 1050 mg of Whole Omega Fatty Acids (*i.e.*, the integral component of the Product).   Specifically, Consumer Lab found that the Product contained only 346.1 mg total omega-5s, 6s, 7s, 9s, and 11s, which is only 48.1 percent of the promised amount of such omegas:

| | | | | | | NA | $0.09 |
|---|---|---|---|---|---|---|---|
| Kirkland Signature™ [Costco] Wild Alaskan Fish Oil (1 softgel daily)16 <br><br> Mfd. by Trident Seafoods Corporation <br> Ingredients | Total Omega-3: 330 mg <br> **Total Omega-5s, 6s, 7s, 9s & 11s: 720 mg** <br><br> Very Large softgel <br><br> Low concentration9 <br><br> Triglyceride | *NOT APPROVED* | ✓ <br> **Total Omega-3** <br><br> Found only 346.1 mg total omega-5s, 6s, 7s, 9s & 11s (48.1% of listed amount) per softgel <br><br> Found: EPA: 134 mg per softgel DHA: 101 mg per softgel <br><br> (Total omega-7s: 116 mg per softgel [61.2% palmitoleic acid]) | ✓ | ✓ | | [$0.04 based on amount *found*] <br><br> Vitamins A & D3 <br><br> *Gluten free, yeast free* <br><br> $21.49/230 softgels |

21.     Plaintiff's counsel also commissioned its own independent analysis of Kirkland Wild Alaskan Fish Oil.  The testing facility found that the Product contained only 40% of the promised amount of omega-3 fatty acids, and only 21% of the promised amount of the remaining fatty acids.

22.     Thus, Defendants failed to disclose the true quantity of the Omega Fatty Acids contained in the Product.

23.     As a result of Defendants' practices, Plaintiff and Class members purchased a product that they would otherwise not have purchased and paid more for a fish oil product than they otherwise would have paid.

24.     Defendants' Kirkland Wild Alaskan Fish Oil also falsely claims to guarantee the potency of the Product:



... one softgel daily with a full glass of water,

## ...plement Facts

| | Amount Per Serving | % Daily Value |
|---|---|---|
| ...t 12 | 1.5 g | 2 %* |
| ...ed Fat | 1.0 g | ** |
| ...at | 0.5 g | ** |
| ...(as Retinol) | <5 mg | 2 % |
| | 900 IU | 18 % |
| | 30 IU | 8 % |
| ...id A | 1,400 mg (1.4g) | ** |
| ... nn: Omega Unsaturated Fatty Acids*** | | |
| ...ty Acids | 330 mg | ** |
| ...ic Acids 5, 6, 7, 9, & 11 | 720 mg | ** |
| | 270 mg | ** |

...ues on a 2,000 calorie diet    ** Daily Value not established
...ories

...(as naturally-formed triglycerides); Gelatin,
... (as a mixed Tocopherol, as an antioxidant).
...ct (Pollock, Cod, Salmon) and Soy.
...t Seafoods Corporation
...ution, P.O. Box 34535
...USA • www.costco.com
...igin is the USA
...tially tested in the USA
...NG INFOLINE 1-8...

Trident SEAFOODS

08/18 LOT 436894

FRESHNESS AND POTENCY GUARANTEED THROUGH:

Kirkland...
whole...
made in...
extraction...
former...
a broad...
naturally...

Our Wild...
harvested...
in well...

Kirkland...
to Omega...

Our Fish Oil...
✓ Vas...

No Artificial...
Caution: If you...
medical prof...
consult your...

Keep out...
Store at...



25.     Because Kirkland Wild Alaskan Fish Oil does not contain the promised quantity of omega unsaturated fatty acids, Defendants' claim regarding the potency of the Product is false and misleading.

26.     Pursuant to 21 U.S.C. § 321(ff), the Product constitutes a "food" regulated by the FDCA, 21 U.S.C. § 301, *et seq.*, and other FDCA regulations.

27.     Defendants' false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular."

28.     Defendants' false, deceptive and misleading label statements are unlawful under the New York Consumer Protection Laws, which prohibits unfair, deceptive or unconscionable acts in the conduct of trade or commerce.

29.     New York prohibits the misbranding of food in a way that parallels the FDCA through N.Y. Agric. & Mkts. Law § 199-a (Consol., Lexis Advance through 2018 Chapter 1), which provides that "[n]o person or persons, firm, association or corporation shall within this state manufacture, compound, brew, distill, produce, process, pack, transport, possess, sell, offer or expose for sale, or serve in any hotel, restaurant, eating house or other place of public entertainment any article of food which is adulterated or misbranded within the meaning of this article." *Id.*

30.     The above laws, and all regulations enacted pursuant thereto, are incorporated into New York law.  Thus, a violation of federal food labeling laws is an independent violation of New York law and actionable as such.

31.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and New York law.

32.     Plaintiff and Class members would not have purchased Kirkland Wild Alaskan Fish Oil, or would not have paid as much for the Product, had they known the truth about the mislabeled and falsely advertised Product.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this class action on behalf of herself and all others similarly situated as Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

34.     Plaintiff seeks to represent a Class defined as follows:

> All persons residing in the State of New York who purchased Defendants' Product.

Excluded from the Class are Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with Defendants, and any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

35.     Certification of the Plaintiff's claims for class wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

36.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The Members of the Class are so numerous that individual joinder of all Class Members in impracticable.   On information and belief, there are thousands of consumers who have been affected by the Defendants' wrongful conduct.  The precise number of the Class Members and their addresses is presently unknown to Plaintiff, but may be ascertained from the Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

37.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Defendants have acted with respect to the Class members in a manner generally applicable to each Class member.  Common questions of law and/or fact exist as to all Class

members and predominate over any questions affecting individual Class members.  There is a well-defined community of interest in the questions of law and fact involved in the action, which uniformly affect all Class members.  Among the questions of law and fact common to the Class are:

a)   The true nature and characteristics of the Product;

b)   Whether Defendants violated express and/or implied warranties concerning the Product;

c)   Whether Defendants' marketing, advertising, packaging, labeling, and other promotional materials for the Product are false, deceptive, or misleading;

d)   Whether Defendants' actions and omissions violated the NYCPL;

e)   Whether Defendants' are liable to Plaintiff and the Class Members under Common Law fraud for their actions and omissions;

f)   Whether Defendants are liable to Plaintiff and the Class members for damages, and the amount of such damages;

g)   Whether Defendants should be enjoined from engaging in such conduct in the future; and

h)   Whether Plaintiff and Class Members are entitled to any other remedy.

38.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member.  All Class members have been and/or continue to be similarly affected by Defendants' wrongful conduct as complained of herein.  Plaintiff is unaware of any interests that conflict with or are antagonistic to the interests of the Class members.

39.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiff will fairly and adequately protect the Class members' interests and has retained counsel competent and experienced in consumer class action lawsuits.  Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and his counsel are aware of their duties and responsibilities to the Class.

40.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class Members as a whole.

41.     **Superiority – Federal Rule of Civil Procedure 23(b)(3)**.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable.  Further, as the damages suffered by each Class member are relatively small, the expense and burden of individual litigation makes it virtually impossible for Class members to individually redress the wrongs done to them by Defendants.  There will be no difficulty in managing this case as a class action.

## CAUSES OF ACTION

### COUNT I
**VIOLATIONS OF THE NEW YORK CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES, GEN. BUS. § 349, AND NEW YORK FALSE ADVERTISING ACT, GEN. BUS. § 350**
**On Behalf Of the Class**

42.     Plaintiff realleges all allegations above as if fully set forth herein.

43.     Defendant's actions complained of herein constitute unlawful deceptive trade practices under New York General Business Law § 349 and violate the New York False Advertising Act, New York General Business Law § 350. These acts protect consumers from deceptive acts or practices and false advertising in the conduct of any business trade, or commerce in the State of New York.

44.     Plaintiff Leibowitz and the Class are consumers and the end users and intended beneficiaries of the Product.

45.     At all times relevant to this Complaint, Defendants have been engaged in consumer-oriented conduct within the intended ambit of the NYCPL, and their conduct affects similarly situated consumers and has a broad impact on consumers at large.

46.     The NYCPL is, by its terms, a cumulative remedy, such that remedies under its

provisions can be awarded in addition to those provided under separate statutory schemes.

47.     Defendants' practices violated the NYCPL for, *inter alia*, one or more of the following reasons:

a.  Defendants represented to Plaintiff and the Class that the Product had approval or characteristics that it did not have;

b.  Defendants represented to Plaintiff and the Class that the Product was of a particular standard, quality, or grade when it was actually of another;

c.  Defendants advertised to Plaintiff and the Class goods with intent not to sell them as advertised;

d.  Defendants engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

e.  Defendants represented that consumers' purchases of the Product conferred or involved rights that the transactions did not have or involve.

48.     Defendants knowingly misrepresented and intentionally omitted and concealed material information regarding the Product to Plaintiff and the Class.

49.     Defendants intended that Plaintiff and Class rely on their acts of concealment and omissions and misrepresentations, so that Plaintiff and the Class would purchase the Product.

50.     Had Defendants disclosed all material information regarding the Product to Plaintiff and the Class, they would not have purchased the Product, or would have paid less for the Product.

51.     Defendants' actions constitute unconscionable commercial practices, deception, fraud, false presents, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts, with the intent that others rely on such concealment, suppression, or omission, in connection with the sales and use of the Product, in violation of NYCPL § 349.

52.     Furthermore, Defendants' actions constitute the materially misleading advertising—which encompasses advertising, including labeling, that is false, deceptive, or fails to reveal material facts—of commodities, in violation of NYCPL § 350.

53.     Defendants' deceptive and misleading advertising and representations are material, in that they are likely to mislead a reasonable consumer acting reasonably under the circumstances. Potential purchasers might reasonably rely on Defendants' statements with respect to the particular standard, quality, or grade of the Product, as the falsity of these statements cannot be ascertained absent complex scientific knowledge.

54.     Had Defendant refrained from the actions complained of herein, Plaintiff Leibowitz would not have purchased (or would have paid less for) the Product.

55.     Defendants' deceptive and misleading actions and omissions as set forth herein have caused and continue to cause injury to Plaintiff Leibowitz, Class Members, and the broader public and public interest.

56.     As a direct and proximate result of Defendants' violations of the NYCPL, Plaintiff Leibowitz and the Class have suffered and continue to suffer damages. Plaintiff Leibowitz and Class Members are entitled to compensatory damages, equitable and declaratory relief, costs, and reasonable attorney's fees.

**COUNT II**
**COMMON LAW FRAUD**
**On Behalf Of the Class**

57.     Plaintiff realleges all allegations above as if fully set forth herein.

58.     The above described conduct and actions constitute common law fraud by way of misrepresentations, concealment and omissions of material facts made by Defendants in inducing Plaintiff and Class Members to purchase the Product.

59.     Defendants, upon information and belief, made the above-described misrepresentations, concealment and omissions of material facts to all Class Members concerning the nature and benefits of the Product, which were material to Plaintiff and Class Members' purchase of the Product.

60.     Defendants intended that the Plaintiff and the other members of the Class rely upon the above-described misrepresentations, concealment and omissions.

61.     Had Defendants disclosed all material information regarding the Product to Plaintiff and the Class, they would not have purchased the Product, or would have paid less for the Product.

62.     Plaintiff and other Class Members justifiably relied upon Defendants' misrepresentations, concealment and omissions to their damage and detriment.

63.     Plaintiff and the Class suffered the damage described in this complaint as a proximate result thereof.

64.     Defendants' conduct was willful, wanton, and reckless.   Based on the intentionally dishonest nature of Defendants' conduct, which was directed at the Class, Defendants should also be held liable to the Class for punitive damages in an amount to be determined at trial.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**On Behalf Of the Class**

65.     Plaintiff realleges all allegations above as if fully set forth herein.

66.     Plaintiff, and each Member of the Class formed a contract with Defendants at the time Plaintiff and the other Class Members purchased the Product.  The terms of the contract include the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above.  This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the members of the Class and Defendants.

67.     Defendants purport through their advertising, labeling, marketing and packaging to create an express warranty that the Product was effective at providing weight loss and appetite suppression.

68.     Plaintiff and the Class Members performed all conditions precedent to Defendants' liability under this contract when they purchased the Product.

69.     Defendants breached express warranties about the Product and its qualities

16

because Defendants' statements about the Product were false and the Product does not conform to Defendants' affirmations and promises described above.  Plaintiff and the Class Members would not have purchased the Product had they known the true nature of the Product's ingredients and what the Product contained.

70.     Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

71.     As a result of Defendants' breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.Y. U.C.C. § 2-314)**
**On Behalf Of the Class**

72.     Plaintiff realleges all allegations above as if fully set forth herein.

73.     Defendants are and were at all relevant times merchants with respect to the Product.

74.     A warranty that the Product was in merchantable quality and condition is implied by law pursuant to N.Y. U.C.C. § 2-314(1).

75.     Defendants impliedly warranted that the Product was of good and merchantable condition and quality – fit and safe for their ordinary intended use.

76.     The Product was defective at the time it left the possession of Defendants, as set forth above, and Defendants knew of this defect at the time these transactions occurred.  Thus, the Product, when sold and at all times thereafter, was not in merchantable condition or quality and is not fit for its ordinary intended purpose.

77.     By virtue of the conduct described herein and throughout this Complaint, Defendants breached the implied warranty of merchantability.

78.     Plaintiff and Class Members have been damaged as a direct and proximate result of Defendants' breach of the implied warranty.

79.     Plaintiff has used the Product in a manner consistent with its intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' conduct.

80.     Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

81.     As a direct and proximate result of Defendants' breach of warranties, Plaintiff and the Class were caused to suffer damages.

**COUNT V**
**UNJUST ENRICHMENT**
**On Behalf Of the Class**

82.     Plaintiff realleges all allegations above as if fully set forth herein.

83.     Through their numerous misleading, unfair and deceptive claims and misrepresentations, Defendants made millions of dollars from the sale of the Product.  The considerable profits were made at the expense of Plaintiff and each Member of the Class, who relied upon Defendants' material representations and omissions.

84.     Plaintiff and Class Members conferred benefits on Defendants by purchasing the Product, which Defendants knowingly appreciated and accepted.

85.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchase of the Product.  Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused injuries to Plaintiff and Class Members because they would have not purchased the Product if the true facts had been known.

86.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class Members for Defendants' unjust enrichment, as ordered by the Court.

<u>COUNT VII</u>
**DECLARATORY RELIEF UNDER THE DECLARATORY JUDGMENT ACT**
**On Behalf Of the Class**

87.     Plaintiff realleges all allegations above as if fully set forth herein.

88.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

89.     Pursuant to 28 U.S.C. § 2201, *et seq*., there is an actual controversy between Defendants and Plaintiff concerning whether:

    a.  Defendants have misrepresented the qualities and characteristics of the Product; and

    b.  Defendants knew or should have known of the misrepresentations regarding the qualities and characteristics of the Product.

90.     Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

91.     Despite the studies which have proven Defendants' representations false, Defendants continue to represent the effectiveness of the Product, and has otherwise failed to correct those misrepresentations.

92.     Accordingly, based on Defendants' repeated and continued misrepresentations, Plaintiff seeks a declaration that Defendants have misrepresented the efficacy of the Product and that its actions are unlawful.

93.     The declaratory relief requested herein will generate common answers that will settle the controversy related to the misrepresented labeling of the Product.  There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests the following relief:

A.     Declaring that this action may be maintained as a class action, certifying the Class as requested herein, appointing Plaintiff as Class Representative, and appointing the undersigned as Class Counsel;

B.     Enjoining Defendants from the unlawful practices and statutory violations asserted herein;

C.     Declaring Defendants' practices to be unlawful;

D.     A judgment awarding Plaintiff and each of the other Members of the Class their actual damages in an amount according to proof as to Defendants' unlawful conduct, as alleged herein;

E.     A judgment awarding Plaintiff and each of the other Members of the Class compensatory, consequential, and special damages in amounts to be proven at trial, as well as statutory damages;

F.     An award of punitive damages, to the maximum extent permitted by law;

G.     A judgment awarding Plaintiff and the other members of the Class restitution, including, without limitation, disgorgement of all profits and unjust enrichment obtained by Defendants as a result of their wrongful conduct, as alleged herein;

H.     An award of delay damages, to the maximum extent permitted by law;

I.     Attorneys' fees, expenses, and the costs of this action to the maximum extent permitted by law;

J.     An award of pre- and post-judgment interest; and

K.     All other and further relief that the Court deems necessary, just, and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff, Norman Leibowitz, hereby demands a trial by jury of all claims in this Class Action Complaint so triable.

Respectfully submitted,

Dated: February 27, 2018

By:      /s/ Jason T. Brown
Jason T. Brown (NY Bar # 4389854)
Nicholas Conlon (NY Bar # 801616)
**JTB LAW GROUP, LLC**
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (201) 630-0000
Fax: (855) 582-5297
Email:  jtb@jtblawgroup.com
        nicholasconlon@jtblawgroup.com

Nick Suciu III (*Pro Hac Vice
Application Forthcoming*)
**BARBAT, MANSOUR & SUCIU
PLLC**
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
Tel: (313) 303-3472
Email: nicksuciu@bmslawyers.com

Jonathan Shub (*Pro Hac Vice
Forthcoming*)
Kevin Laukaitis *(Pro Hac Vice
Forthcoming)*
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3304
Tel: (215) 238-1700
Fax: (215) 238-1968
Email:  jshub@kohnswift.com
        klaukaitis@kohnswift.com

Gregory F. Coleman (*Pro Hac Vice
Application Forthcoming*)
**GREG COLEMAN LAW, P.C.**
First Tennessee Plaza
800 S. Gay Street. Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0090
Facsimile:  (865) 522-0049
Email: greg@gregcoleman.law

*Attorneys for Plaintiff and the Proposed
Class*